JS 44  (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SUSAN E. CONREY

**(b)** County of Residence of First Listed Plaintiff  Burlington County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Katherine C. Oeltjen, Esquire; Console Mattiacci Law
110 Marter Avenue, Suite 105; Moorestown, NJ 08057
856-854-4000

## DEFENDANTS

IBM CORPORATION

County of Residence of First Listed Defendant  Westchester County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine | Injury Product | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| | Medical Malpractice | | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.; Age Discrimination in Employment Act, 29 U.S.C. §621, et seq.; New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

Brief description of cause:
Plaintiff brings this claim against her former employer for wrongful termination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $100,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  February 7, 2017

SIGNATURE OF ATTORNEY OF RECORD  *Katherine C. Oeltjen*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **SUSAN E. CONREY** | : | **CIVIL ACTION NO.** |
| **Moorestown, NJ 08057** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **IBM CORPORATION** | : | **JURY TRIAL DEMANDED** |
| **1 New Orchard Road** | : | |
| **Armonk, New York 10504-1722** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

### I.    INTRODUCTION

After more than twenty-five years of dedicated service, Susan E. Conrey ("Plaintiff") was terminated by IBM Corporation ("Defendant") on or about October 8, 2015 in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").   In the months prior to her termination, Plaintiff was subjected to discrimination on the basis of her sex and age, including being subjected to a hostile work environment by substantially younger, male managers, one of whom told her, *inter alia*, that she was "just like my mom" and that she was part of the "old" IBM.  Deeply upset by the outrageous conduct of her managers, Plaintiff complained to Defendant of sex and age discrimination. Her termination followed.  Plaintiff seeks damages, including economic loss, compensatory, liquidated and punitive damages, costs and attorney's fees and all other relief that this Court deems appropriate.

II.  **PARTIES**

1.  Plaintiff, Susan E. Conrey, is an individual and a citizen of the State of New Jersey. She resides in Moorestown, NJ 08057.

2.  Plaintiff is female.

3.  Plaintiff is fifty-six (56) years old.

4.  Defendant International Business Machines Corporation ("IBM") is a New York Corporation headquartered at One (1) New Orchard Road, Armonk, New York.

5.  Defendant is engaged in an industry affecting interstate commerce and regularly does business in the state of New Jersey.

6.  At all times material hereto, Defendant maintained a business location at 525 Lincoln Avenue West, Marlton, New Jersey.

7.  At all times material hereto, Plaintiff worked out of both Defendant's Marlton, New Jersey location and her home office located in Moorestown, New Jersey.  Plaintiff also traveled on behalf of Defendant to numerous client sites.

8.  At all times material hereto, Defendant employed fifteen (15) or more employees.

9.  At all times material hereto, Defendant acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of its business.

10.  At all times material hereto, Defendant was an employer within the meaning of the statutes which forms the basis of this matter.

11.  At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which forms the basis of this matter.

2

III.   **JURISDICTION AND VENUE**

12.      The causes of action which form the basis of this matter arise under the Title VII, the ADEA and the NJLAD.

13.      The District Court has jurisdiction over Count I (Title VII) and Count II (ADEA) pursuant to 28 U.S.C. §1331.

14.      The District Court has supplemental jurisdiction over Count III (NJLAD) pursuant to 28 U.S.C. §1367.

15.      Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5.

16.      On or about March 29, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto and incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

17.      On or about November 10, 2016, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge.  Attached hereto, and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

18.      Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

III.   **FACTUAL ALLEGATIONS**

19.      Plaintiff was hired by Defendant in or about 1984.

20.     From 1984 to 2003, she worked in sales and sales support capacities in a number of areas of Defendant's business.

21.     In 2003, Plaintiff was part of a reduction in force at Defendant.

22.     In or about February, 2007, Defendant re-hired Plaintiff as a Client Executive, Healthcare and Life Sciences Industry within Defendant's Sales and Distribution Division.

23.     At all times material hereto, Plaintiff performed her job well, routinely receiving positive performance feedback.

24.     On or about April 28, 2014, Plaintiff's entire group was moved from Sales and Distribution into Defendant's Software Group "overnight."

25.     Plaintiff's role changed to Software Sales Specialist-WebSphere.

26.     Plaintiff was tasked with selling a highly technical "middleware" product called WebSphere.

27.     WebSphere is Defendant's application and integration software platform, and includes the entire middleware infrastructure, including servers, services and tools needed to create, deploy, run and monitor round-the-clock, enterprise-wide web applications and cross-platform, cross-product solutions.

28.     Also on April 28, 2014, Plaintiff began reporting to Dennis Reardon (male, 29)[1].

29.     Reardon routinely commented on Plaintiff's age and gender during his supervision of Plaintiff, evidencing a bias toward older, female workers. Without limitation:

---

[1] All ages are approximate based on Plaintiff's information and belief.

4

a. Reardon told Plaintiff that she didn't work at the "old IBM" and inferred that her age would make it difficult for her to get "up to speed" with the "new IBM";

b. Reardon, despite knowing she had been recently injured, insisted that pain Plaintiff was experiencing in her neck must be "arthritis" because of her age; and

c. Reardon told Plaintiff she was "just like my mom."

30.     Beginning in or about July, 2014, Reardon engaged in the following discriminatory conduct, without limitation:

a. Reardon micromanaged Plaintiff's performance, including monitoring the time at which she entered routine calendar information into Defendant's sales support systems;

b. Reardon required Plaintiff to immediately have accountability for high dollar value accounts in the middleware space despite a lack of training on the product; and,

c. Reardon assigned her unrealistic sales objectives for institutional clients, and threatened her with termination if she failed to meet those objectives.

31.     Reardon did not subject Plaintiff's younger, male counterparts to the same treatment.

32.     On or about August 26, 2014, Plaintiff complained to Renee Cunningham ("Cunningham") Human Resources Business Partner, of Reardon's discriminatory conduct, including the resulting hostile work environment.

33.     Cunningham told Plaintiff that she would investigate her complaint.

34.     At the same time, Plaintiff also complained of Reardon's discriminatory conduct to Patrick Clarke ("Clarke") (male, 30's), Mid-Atlantic WebSphere Sales Leader, and Reardon's direct supervisor.

35.     Clarke told Plaintiff that he could not discipline Reardon for his discriminatory conduct because he needed his "aggressive" tactics to generate high sales.

36.     Shortly thereafter, Reardon said to Plaintiff, "Do you know Renee Cunningham? I know you know Renee Cunningham." Plaintiff understood Reardon to be telling her that he knew of her complaint.

37.     During her investigation, Cunningham told Plaintiff that the best "antidote" to Reardon's threats would be to "sell more" and "sales managers are under a tremendous amount of stress."

38.     To the best of Plaintiff's knowledge, Defendant did not take any disciplinary action against Reardon for his discriminatory conduct.

39.     Reardon continued to harass and demean Plaintiff, including, without limitation: ordering her to look for another job; insisting that she be prepared to tender her resignation; micromanaging her daily activities; withholding compensation she had earned and, inaccurately reporting Plaintiff's progress relative to objective metrics.

40.     On or about January 26, 2015, Reardon removed Plaintiff's most lucrative account and gave it to a substantially younger, male colleague.

41.     Defendant then required Plaintiff to solely service accounts without any history of ordering Defendant's middleware products or accounts where Defendant knew that Plaintiff would not be able to generate sales.

42.     Defendant did not adjust her sales objectives to reflect a total absence in historical sales in contrast to Defendant's practice of determining sales objectives for its sales employees.

43.     To the best of Plaintiff's knowledge, Defendant followed its stated practice of referencing historic sales information when calculating sales objectives for her substantially younger, male counterparts.

44.     Plaintiff complained to Clarke of the on-going discriminatory conduct to which she was subjected, including a hostile work environment.

45.     On or about February 19, 2015, Plaintiff began reporting to Carlos Vasconellos (male, 40's).

46.     During their first meeting, Vasconellos told Plaintiff that Reardon had told him "all about" Plaintiff.

47.     For the quarter ended March 31, 2015, Plaintiff was responsible for closing 50% of Vasconcllos' team's business.

48.     On or about April 6, 2015, less than two months after she began reporting to him, Vasconellos placed Plaintiff on an unwarranted "Short-term Improvement Plan." ("PIP").

49.     The PIP contained inaccurate information.

50.     Plaintiff complained to Clarke, Vasconellos and Cunningham that she continued to be subjected to discriminatory treatment and that the unwarranted, inaccurate PIP was evidence of same.

51.     Clarke responded by telling Plaintiff that the PIP was not a formal performance improvement plan, but rather a "Succession Plan." In that same communication, Clarke acknowledged her complaints of discrimination.

52.     On or about June 16, 2015, Vasconellos told Plaintiff her employment was terminated, effective thirty days hence. The only reason given was her failure to meet the objectives of the "Succession Plan."

53.     Vasconellos had not given Plaintiff any negative feedback on her performance during the pendency of the "Succession Plan."

54.     Vasconellos told Plaintiff that she should try to "reinvent herself."

55.     On or about July 16, 2015, Plaintiff filed an "Open Door" with Defendant and again detailed her complaint of discrimination and resulting retaliation to Nancy LaCivita ("LaCivita"), Human Resources.

56.     After Plaintiff filed the Open Door, Vasconellos removed her from all team emails and excluded her from team meetings. He also told colleagues that Plaintiff would no longer be servicing her accounts.

57.     LaCivita conducted a cursory "investigation."

58.     LaCivita told Plaintiff that Reardon, Clarke and Vasconellos "hadn't handled things well," but her termination would stand.

8

59.     Plaintiff, consistent with Defendant's policies, appealed the Open Door findings to Russell Mandel, Concerns & Appeals Program Director.

60.     On or about September 10, 2015, Vasconellos informed Plaintiff that because she had chosen to appeal the findings of the Open Door, *inter alia*, her performance was being rated "Unsatisfactory," she would be placed on a PIP for thirty days and was at risk for losing the severance package offered to her on June 16, 2015.

61.     Mandel denied Plaintiff's appeal.

62.     Plaintiff met each of the substantive goals and objectives contained in the PIP presented to September 10, 2015.

63.     Plaintiff's employment terminated on or about October 8, 2015.

64.     Plaintiff was replaced by a twenty-five year old male sales person on at least one account.

65.     Defendant failed to provide a legitimate, non-discriminatory reason for the discriminatory and retaliatory conduct to which Plaintiff was subjected.

66.     Defendant's stated reason for the discriminatory and retaliatory conduct to which Plaintiff was subjected is false and pre-textual.

67.     Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory and retaliatory treatment of Plaintiff.

68.     Plaintiff's age was a motivating and/or determinative factor in connection with Defendant's discriminatory and retaliatory treatment of Plaintiff.

69.     Plaintiff's complaining of sex and age discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff.

9

70.     Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

71.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

72.     The discriminatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

73.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

74.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

75.     No previous application has been made for the relief requested herein.

## COUNT I - TITLE VII

76.      Plaintiff incorporates herein by reference paragraphs 1 through 75 above, as if set forth herein in their entirety.

77.      By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

78.      Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

79.      As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

80.      Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

81.      No previous application has been made for the relief requested herein.

## COUNT II – ADEA

82.      Plaintiff incorporates herein by reference paragraphs 1 to 81 above, as if set forth herein in their entirety.

83.      By committing the foregoing acts of discrimination against Plaintiff, Defendant violated the ADEA.

84.      Defendant's violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

85.      As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

11

86.     Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

87.     No previous application has been made for the relief requested herein.

## COUNT III – NJLAD

88.     Plaintiff incorporates herein by reference paragraphs 1 to 85 above, as if set forth herein in their entirety.

89.     Defendant, by the above-described discriminatory and retaliatory acts, has violated the NJLAD.

90.     Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

91.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

92.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

93.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

12

(b)      declaring the acts and practices complained of herein to be a violation of the ADEA;

(c)      declaring the acts and practices complained of herein to be in violation of the NJLAD;

(d)      entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(e)      enjoining and restraining permanently the violations alleged herein;

(f)      awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory, and unlawful misconduct;

(g)      awarding liquidated damages;

(h)      awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(i)      awarding Plaintiff costs of this action, together with reasonable attorney's fees; awarding punitive damages to Plaintiff;

(j)      awarding Plaintiff such other damages as are appropriate under the Title VII, ADEA and the NJLAD; and

(k)      granting such other and further relief as this Court deems appropriate.

CONSOLE MATTIACCI LAW, LLC

Dated: February 7, 2017      BY: _____

Stephen G. Console (04028-1983)
Katherine C. Oeltjen (57372013)
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852
*Attorneys for Plaintiff Susan Conrey*

13

Exhibit "1"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | ☐ FEPA<br>X EEOC | 530-2016-02379 |

| STATE OR LOCAL AGENCY: | | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>**Susan Conrey** | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS ▓ | CITY, STATE AND ZIP<br>**Moorestown, NJ 08057** | DATE OF BIRTH ▓ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**IBM Corporation** | NUMBER OF EMPLOYEES,<br>MEMBERS  **> 1000** | TELEPHONE (Include Area Code)<br>**914-499-1900** |
|---|---|---|
| STREET ADDRESS<br>**1 New Orchard Road** | CITY, STATE AND ZIP<br>**Armonk, New York 10504-1722** | COUNTY<br>**Westchester** |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>☐ Race  ☐ Color  X Sex  ☐ Religion  ☐ National Origin<br> X Retaliation   X Age  ☐ Disability  ☐ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>**October 8, 2015** |
|---|---|

## 1. Relevant Work History

I was hired by IBM Corporation, ("IBM" or "Respondent"), in or about February, 2007 as a Client Executive, Healthcare and Life Sciences Industry.  My position was within IBM's Sales & Distribution Division. Previously, I had worked for IBM from 1984-2003 in a similar role. As a result, I was employed by IBM for more than twenty-five years.

From February, 2007 to late 2012, I reported to Mary Jane Blatt, (50's) [1] (female) ("Blatt"), Regional Manager.  From late 2012 until April 28, 2014, I reported to a series of three regional managers; each remaining in his or her post for a short period of time. On or about April 28, 2014, my entire group was suddenly (overnight) moved into a different division—IBM's Software Group. My role became Account Executive Healthcare Industry—Mobility, Application & Cloud Integration.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct.<br><br><br>3·28·16<br>Date:          Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

---

[1] All ages are approximate, based on Charging Party's information and belief.

SUSAN CONREY V. IBM CORPORATION
EEOC CHARGE OF DISCRIMINATION
Page 2 of 6

In the new role, I was tasked with selling a highly technical "middleware" product called WebSphere.  WebSphere is IBM's application and integration software platform, and includes the entire middleware infrastructure, including servers, services, and tools, needed to create, deploy, run, and monitor round-the-clock, enterprise-wide web applications and cross-platform, cross-product solutions. The product is highly technical and sales and support of same required an extensive effort to learn its technical aspects. Also on or about April 28, 2014, I began to report to Dennis Reardon, (29) (male) ("Reardon"), Regional Manager, IBM Software Group. Reardon reported to Patrick Clarke, (30's) (male) ("Clarke"), Mid-Atlantic WebSphere Sales Leader.  On or about February 19, 2015, I began report to Carlos Vasconellos, (49) (male) ("Vasconellos"), Regional Manager, IBM Software Group. At all times, I was based out of a Marlton, New Jersey IBM location, though I largely worked from home, with routine travel to client sites.

Throughout my employment, I performed my duties in a consistently exemplary manner. By way of example only, I routinely received merit driven salary increases and incentive compensation. In addition, in June, 2014 I was given an additional merit based salary increase and special recognition from Respondent for closing a particularly notable sale.

2. **Harm Summary**

A.  I believe that Respondent has discriminated against me due to my age and gender, and the combination thereof. Respondent has also retaliated against me for engaging in protected activity by complaining of age and gender discrimination. Evidence of discriminatory and retaliatory conduct includes, but is not limited to, the following:

1.  Respondent's demographics demonstrate a gender bias. For example, and without limitation, the entire sales management team is male. In addition, with only one exception (not including myself), all sellers reporting to Reardon and Vasconellos were male.

2.  Reardon routinely referenced my age (particularly relative to his own) and gender during our interactions. Specifically, and without limitation:

    a.  Reardon reminded me that I didn't work at the "old IBM" and inferred that my age would make it difficult to get up to speed with a "new" IBM.

    b.  I experienced neck pain and vertigo after an injury on-board a flight coming home from a conference that I attended on behalf of Respondent.  Though Reardon knew the circumstances of my injury, he insisted that my neck pain had to be "arthritis" because of my age.

## SUSAN CONREY V. IBM CORPORATION
### EEOC CHARGE OF DISCRIMINATION
### Page 3 of 6

    c.  Reardon told me "you are just like my mom."

3. Unlike my younger, male counterparts, I was immediately placed in a position of responsibility over several high dollar value accounts. Therefore, I did not receive any time dedicated to training and education to learn the technical aspects of WebSphere. Instead, I was immediately given lofty sales goals for the new product, while also being directed to continue to perform duties that I held prior to my group's move into Reardon's group. In sum, I was performing two jobs without Reardon's support, unlike my younger, male counterparts.

4. Reardon threatened me, multiple times, with the loss of my job when he felt that I was not meeting unrealistic sales targets quickly enough. He did not communicate with younger, male sellers in the same manner.

5. On or about August 26, 2014, I complained to Renee Cunningham, (45) (female) ("Cunningham"), Human Resources Business Partner of Respondent that Reardon was subjecting me to a hostile work environment and discriminating against me because of my age and gender. Per IBM's policy, my complaint of discrimination was made confidentially.

6. Shortly thereafter, Reardon said to me, "Do you know Renee Cunningham? I know you know Renee Cunningham." I understood Reardon to be telling me that he knew I had complained about his discriminatory behavior to Human Resources.

7. After my complaint, Reardon began increasingly to harass and humiliate me. For example, and without limitation:

    a.  Reardon routinely threatened me with the loss of my job, telling me on one Friday that I should spend the weekend looking for another job within IBM and be prepared to tender my resignation on the following Monday despite my good performance;

    b.  Reardon micromanaged my daily activities, including minutia such as logging data entries related to the many face-to-face meetings that I had with clients; and,

    c.  Reardon inaccurately reported my progress relative to objective metrics, including, but not limited to, development of sales pipeline, the number of client contacts I had as well as my progress, daily

activities, and relative success to Clarke. I corrected Reardon's inaccurate reporting repeatedly, to no avail.

8. Beginning on or about August 26, 2014 and continuing throughout the remainder of 2014, I complained to Clarke about the hostile work environment to which I was subjected to by Reardon through face-to-face meetings, telephone calls and e-mail. Clarke indicated to me that because of Reardon's strong sales performance, from which Clarke benefitted financially, my complaint about his discriminatory treatment was not important.

9. On or about January 26, 2015, Reardon removed my most lucrative account, replacing it with a handful of customer accounts that had not placed **any** sales for WebSphere—or any IBM middleware product—for years.   Reardon denied that performance was the reason for the change.

10. My sales quotas—a metric by which my performance was judged and by which my compensation was determined—were not adjusted to reflect that I was now servicing accounts that had no (zero) historic sales with Respondent. Per company policy, IBM sellers' sales quotas are to be developed by using historic sale data; upon information and belief, other younger, male sellers within Reardon's group had their sales quotas determined by referencing historic sales information.

11. I complained to Clarke that my quotas were unrealistic and inconsistent with IBM's policy. He declined to make any adjustment to the quotas. In addition, Respondent routinely withheld compensation that I had earned and Clarke and Reardon ignored my complaints regarding same.

12. On or about February 19, 2015, Reardon's territory was divided into two regions, Mid-Atlantic and Potomac. I began reporting to Vasconellos, Regional Manager Mid-Atlantic.

13. During an introductory meeting, Vasconellos told me that Reardon had told him "all about me" in a manner from which I understood him to mean that Reardon had told Vasconellos of my complaint to Human Resources.

14. For the quarter ending March 31, 2015, I closed 50% of the team's business.

15. On or about April 6, 2015, Vasconellos placed me on a "Short-term Improvement Plan," ("PIP"), via email. At the time Vasconellos sent the plan, I had only worked for Vasconellos for seven weeks and had not received any

coaching—formal or informal during that time.   In fact, I had only met Vasconellos in person twice times.

16. The PIP was full of inaccuracies.  I identified same to Vasconellos and Clarke.

17. At or around the same time, I reminded Clarke and Vasconellos, as well as Cunningham, of my discrimination complaint and on-going hostile work environment. I provided specific examples of discriminatory and hostile treatment to which I had been and continued to be subjected.

18. In response, Clarke denied that the PIP was a performance improvement plan and instead advised me that a new document would be issued by Vasconellos. The new document would be called a "Succession Plan" or a document from which I could refer to in order to continue to succeed in my new role. I never received the "Succession Plan."

19. From April 6, until June 12, 2015, I received only positive feedback from Vasconellos during weekly "Checkpoint" calls.

20. On June 11, 2015, I turned fifty-five (55) years old. Vasconellos sent me a "Happy Birthday" message via text message.  The next day he sent me a meeting invite for a face-to-face meeting to take place the following week.

21. At that face-to-face meeting, on or about June 16, 2015, Vasconellos told me that my employment was being terminated, effective in thirty days. Vasconellos further told me that I needed to "reinvent" myself in order to succeed elsewhere in the future.  I was offered minimal severance and asked to sign a general release agreement.

22. On or about June 20, 2015, Clarke told me that if I failed to accept the severance and sign the release that he would rate my performance at the lowest level possible within IBM's rating system, place me on a thirty-day (30) PIP and terminate me at the PIP's conclusion without severance.

23. I filed an "Open Door" with Respondent and detailed my complaint of discrimination and retaliation to Nancy LaCivita, (50's) (female) ("LaCivita"), Human Resources of Respondent.  During the pendency of the Open Door, my termination was stayed and I was required to continue to perform all aspects of my job.

SUSAN CONREY V. IBM CORPORATION
EEOC CHARGE OF DISCRIMINATION
Page 6 of 6

24. Following my filing of the Open Door, Vasconellos removed me from all team emails and routinely excluded me from team meetings. In addition, he communicated with colleagues in a manner that indicated I would no longer be servicing my accounts. Despite that, I met the metrics identified by Vasconellos in the April, 2015 PIP throughout this period.

25. LaCivita conducted a cursory investigation. Shortly before Labor Day, 2015, I was notified that though LaCivita agreed that Reardon, Clarke and Vasconellos hadn't handled things "well," my termination would stand.

26. I appealed LaCivita's determination to Russell Mandel, Human Resources of Respondent.

27. Mandel denied my appeal and my termination became effective on October 8, 2015.

28. I was replaced by a male, twenty-five (25) years old, on at least one of my accounts.

B. **Respondent's Stated Reason**

Respondent has not provided a legitimate, non-discriminatory reason for the discriminatory and retaliatory treatment to which I have been subjected, including, but not limited to: placing me on a PIP, removing certain accounts, subjecting me to a hostile work environment and terminating me. The stated reason for my termination, "performance," is pre-textual.

C. **States and Bases of Allegations**

I believe Respondent has discriminated and retaliated against me because of my gender (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) *et seq.*, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). Respondent has also discriminated and retaliated against me because of my age (55) in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA") and the NJLAD.

Exhibit "2"

EEOC Form 161-B (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Susan Conrey**

■■■■■■■
**Moorestown, NJ 08057**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2016-02379 | **Legal Unit** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_[signature]_                                    11/10/16

**Spencer H. Lewis, Jr.,**                        *(Date Mailed)*
**District Director**

Enclosures(s)

cc:   **John M. Nolan, Esq.**          **Eileen K. Keefe, Esq.**        **Kate C. Oeltjen, Esq.**
      **JACKSON LEWIS P.C.**          **JACKSON LEWIS P.C.**         **CONSOLE LAW OFFICES, LLC**
      **Three Parkway**              **Three Parkway**             **1525 Locust St.**
      **1601 Cherry Street**         **1601 Cherry Street**        **9th Floor**
      **Suite 1350**                **Suite 1350**                **Philadelphia, PA 19102**
      **Philadelphia, PA 19102**     **Philadelphia, PA 19102**